UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAMASALEH AHMED SUSEYI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of the ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. C09-1187-BAT <br><br> **ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff Hamasaleh Ahmed Suseyi seeks review of the denial of his application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration. Dkt. 1. For the reasons below, the Court orders the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is presently 45 years old, a college graduate, and has past relevant work experience as a housekeeper. Tr. 75, 108, 110. On August 2, 2006, he applied for disability insurance benefits and supplemental security income alleging disability beginning June 12, 1996. Tr. 9. His application was denied initially and on reconsideration. *Id.* He subsequently requested a closed period of disability of June 12, 2006 to November 1, 2008. *Id.* After a hearing conducted on

ORDER REVERSING AND REMANDING CASE FOR
FURTHER ADMINISTRATIVE PROCEEDINGS – 1

March 24, 2009, the Administrative Law Judge (ALJ) issued a decision, on April 22, 2009, finding plaintiff not disabled. Tr. 6-16. On July 6, 2009, the Appeals Council denied review of that decision making it the Commissioner's final decision under 42 U.S.C. § 405(g). Tr. 1.

## II. THE ALJ'S DECISION

Applying the five-step sequential evaluation process[1] for determining whether a claimant is disabled, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 12, 2006 through November 1, 2008. Tr. 11.

At step two, the ALJ found plaintiff had the following severe impairments: post traumatic stress disorder (PTSD) and depression. *Id*.

At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of listed impairments.[2] Tr. 12.

Before proceeding to step-four, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with nonexertional limitations. The ALJ found claimant retained the capacity to perform simple, repetitive tasks and could have occasional superficial contact with the general public. Tr. 13.

At step four, the ALJ found plaintiff could perform past relevant work as a housekeeper and was therefore not under a disability, as defined in the Social Security Act.

## II. STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920.
[2] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## III. DISCUSSION

**A.  Plaintiff's medically determinable severe impairments**

Plaintiff argues, and the Court agrees, the ALJ, at step two,[3] erred in finding that plaintiff's sleep apnea is not a severe impairment. Dkt. 11 at 6. There is no dispute plaintiff suffers from sleep apnea. Dr. Daniel Clerc, M.D. performed an overnight polysomnography study establishing plaintiff suffers from sleep apnea (Tr. 272), the ALJ's decision recognizes plaintiff "was later diagnosed with sleep apnea," (Tr. 12) and the Commissioner concedes plaintiff suffers from sleep apnea. Dkt. 15 at 5-6. The record also establishes that plaintiff's sleep apnea is severe. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c), 404.1521(a). Plaintiff's treating physician Dr. Sara Fleming, M.D. opined that plaintiff's sleep apnea causes moderate to marked limitations (significant interference to very significant interference with the ability to perform one or more basic work related activities) (Tr. 240) and the Commissioner concedes the ALJ erred in rejecting this opinion. Dkt. 15 at 7.

The Commissioner contends, however, that the ALJ's errors are harmless because the limitations associated with plaintiff's sleep apnea are accounted for in the ALJ's residual functional capacity finding and is therefore "inconsequential to the ultimate disability determination." *Id*. at 6,

---

[3] At step two, plaintiff must show (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c).

ORDER REVERSING AND REMANDING CASE FOR
FURTHER ADMINISTRATIVE PROCEEDINGS – 3

8. The Ninth Circuit recognizes that harmless error can occur in the Social Security context. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where the ALJ provides a number of justifications for his decision, only some of which constitute error, the Court must determine whether the remaining legitimate justifications provide substantial evidence supporting the ALJ's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The key issue is "whether the ALJ's underlying decision remains supported, in spite of any error, and not whether the ALJ would necessarily reach the same result on remand." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 n. 4 (9th Cir. 2008).

However, where the ALJ ignores competent evidence and fails to provide reasons for rejecting the evidence at issue, an error is harmless only if the court "can confidently conclude that no reasonable ALJ, when not making the same error as the ALJ, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006), *see also Carmickle*, at 1162-63.

The Court does not find the ALJ accounted for or considered limitations caused by plaintiff's sleep apnea in determining plaintiff's RFC. The ALJ found plaintiff had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations. The non-exertional limitations the ALJ set forth were "perform simple, repetitive tasks" and have only "occasional superficial contact with the general public." Tr. 13. These limitations were based on the ALJ's view that "with regard to concentration, persistence or pace, [plaintiff ] had moderate difficulties." Tr. 13. But Dr. Fleming opined that plaintiff's sleep apnea caused significant interference to very significant interference with plaintiff's ability to perform one or more basic work related activities, i.e. that plaintiff had moderate to marked limitations. As the ALJ's analysis did not take into account marked limitations resulting from sleep apnea, or limitations caused by

sleep apnea in combination with plaintiff's other limitations, the Court concludes the ALJ's error is not harmless.

**B.      The ALJ's evaluation of medical opinions**

Plaintiff argues the ALJ improperly rejected the opinions of treating physician Sara Fleming, M.D., and examining psychologists Shawn Kenderline, Ph.D. and Richard Washburn, Ph.D. Dkt. 15 at 7-10.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating physician's opinion is not contradicted by another physician, the ALJ may reject it only for "'clear and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where a treating physician's opinion is contradicted, the ALJ may not reject it without providing "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

**1. Dr. Fleming**

In August 2007, Dr. Fleming completed a physical examination of plaintiff in which she opined that plaintiff's overall ability to work was "severely impaired." Tr. 240. Dr. Fleming diagnosed plaintiff with depression, PTSD and sleep apnea. *Id.* She opined plaintiff's depression

and PTSD caused severe impairment, i.e., that he had the "inability to perform one or more basic work-related activities." *Id.* Dr. Fleming also opined plaintiff's sleep apnea caused moderate to marked impairment, i.e. that this condition interfered significantly to very significantly with plaintiff's ability to perform one or more basic work related activities. *Id.*

The ALJ rejected Dr. Fleming's opinion on three grounds. First, the ALJ rejected her opinion on the ground that it "is not consistent with the objective medical evidence." This is not the type of specific, legitimate reason based on substantial evidence in the record that the Court requires when the opinion of a treating physician is rejected. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citations omitted). As the Court in *Embrey v. Bowen* stated:

> To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail.

*Embry* at 421-22.

The Commissioner defends the ALJ's decision by arguing the Court should infer that when the ALJ rejected Dr. Fleming's opinion, he was referring to the opinions of examining physician Ellen Hargrove, M.D. and consultative psychologist Renee Eisenhauer, Ph.D. Dkt. 15 at 9-10. The Court is not persuaded by this argument. It is contrary to the requirement that an ALJ must set forth specific and legitimate reasons for rejecting a treating physician's opinion. The Court will not make any inferences as it is the ALJ, not the Court that is required to provide specific reasons for rejecting Dr. Fleming's opinion. Moreover, the Court is constrained to review the reasons the

ORDER REVERSING AND REMANDING CASE FOR
FURTHER ADMINISTRATIVE PROCEEDINGS – 6

ALJ asserts, and cannot affirm the ALJ's decision on a ground that the ALJ did not invoke in making its decision. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Consequently, the Court declines to affirm the ALJ's decision on a ground not specifically invoked by the ALJ.

Second, the ALJ rejected Dr. Fleming's opinion on the ground that it "did not provide an explanation of the claimant's psychiatric limitations." Tr. 15. This is a conclusory assertion and not a proper ground to reject the doctor's opinion. The Commissioner argues this is a specific and legitimate reason for rejecting the doctor's opinion. Dkt. 15 at 11. But this argument requires the Court to infer, as the Commissioner urges, that the ALJ meant Dr. Fleming "did not specifically explain, with supporting detailed rationale how the evidence supported her opinion." *Id.* But as the ALJ did not state he was relying on these reasons for rejecting the doctor's opinion, neither will the Court.

Additionally, if the ALJ thought he needed to know more about the basis of Dr. Fleming's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry by calling the doctor to testify or by submitting questions. *See Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996). "The ALJ has a special duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

And third, the ALJ rejected Dr. Fleming's opinion on the ground that the doctor performed a physical evaluation and "was considering the claimant's physical limitations in addition to his psychiatric condition." Tr. 15. This is not a specific and legitimate reason for rejecting Dr. Fleming's opinion about plaintiff's limitations based on his psychiatric conditions, PTSD, and depression. And as the Commissioner concedes, this is not a legitimate reason to reject Dr. Fleming's opinion about plaintiff's limitations based on his physical conditions, sleep apnea. Dkt. 15 at 7. Accordingly, the Court finds the ALJ rejected Dr. Fleming's opinion without giving

specific and legitimate reasons.

**2. Dr. Kenderline**

In August 2006, Dr. Kenderline performed a psychological evaluation of plaintiff. Dr. Kenderline opined plaintiff suffers from PTSD and depression. Tr. 168. He found plaintiff had "unusual memory impairment with performance on digit span well below normal limits" and that plaintiff "did not correctly follow instructions." Tr. 169. The doctor also noted plaintiff had marked limitations in his ability to respond to and tolerate pressures and expectations in the work place, that plaintiff had some "paranoid" thought content and that his "emotional range was severely restricted." Tr. 170.

The ALJ rejected Dr. Kenderline's opinions on the grounds that 1) it is "not consistent with the objective medical evidence," 2) the doctor "met with claimant only once" and 3) the doctor's findings are "largely based upon the claimant's subjective self-reports of his symptoms." Tr. 15.

The Commissioner concedes the ALJ did not state what objective medical evidence the doctor's opinion was inconsistent with. Dkt. 15 at 12. For the reasons discussed above, the Court concludes the ALJ's rejection of Dr. Kenderline's opinions on the ground that it is not consistent with the objective medical evidence is conclusory, not a specific and legitimate reason, and therefore erroneous.

Likewise, the Court also concludes rejecting the doctor's opinion on the ground he "met with claimant only once" is a conclusory statement. The Commissioner suggests an ALJ may reject a doctor's opinion if the doctor has not "obtained a longitudinal picture" of the claimant's impairments. Dkt. 15 at 12. But the ALJ here did not articulate or state he was relying on this reason for rejecting the doctor's opinion and neither will the Court. Moreover, some of Dr. Kenderline's opinions were based on tests he had plaintiff perform. There is nothing to indicate

that the tests were invalid or that the doctor should have administered the tests repeatedly before rending an opinion about plaintiff's limitations.

Additionally, having "met claimant only once" is not a convincing or legitimate ground to reject a medical opinion. If it were, the opinions of most examining doctors, who generally see a claimant just once, should be rejected. Likewise, the medical opinions of treating doctors who saw a patient once to perform a test, surgery, X-ray or MRI, or other medical procedure should be excluded. The Court concludes it is not legitimate to reject a medical opinion solely based on the number of examinations the medical source performed.

And finally, the Commissioner concedes it was improper for ALJ to reject the doctor's opinions on the grounds they are largely based upon the claimant's subjective self-reports of his symptoms. Dkt. 15 at 13. Accordingly, the Court finds the ALJ improperly rejected Dr. Kenderline's opinions.

**3. Dr. Washburn**

Dr. Washburn performed a psychological evaluation of plaintiff in September 2008. Tr. 15. He found plaintiff had marked depressed mood and marked verbal expression of anxiety and fear. He assessed plaintiff's Global Assessment Functioning (GAF) as 55. Dr. Washburn also found plaintiff had multiple moderate, marked and severe functional limitations. *Id.* He opined plaintiff's depression and PTSD caused severe impairment, i.e., that he had the "inability to perform one or more basic work-related activities." Tr. 240. He also opined plaintiff's sleep apnea caused moderate to marked impairment, i.e. that this condition interfered significantly to very significantly with plaintiff's ability to perform one or more basic work related activities. *Id*.

The ALJ rejected Dr. Washburn's opinions for the same reasons he rejected Dr. Kenderline's opinions. For the reasons discussed above, the ALJ erred in rejecting Dr. Washburn's opinions on

the grounds that it is not consistent with the objective medical evidence, and the doctor met with plaintiff only once.

The ALJ also erred in rejecting the doctor's opinion on the ground it was largely based on plaintiff's subjective complaints. Dkt. 15 at 21. Dr. Washburn opined plaintiff's cognitive limitations were significant and included poor memory, poor mental flexibility, very poor concentration and attention, poor abstract reasoning, and poor practical reasoning. The Commissioner acknowledges that Dr. Washburn relied on a mental status evaluation and testing, and not plaintiff's subjective complaints, with respect to these findings. *Id.* It was therefore not proper for the ALJ to reject all of Dr. Washburn's findings and opinions on the grounds they were based "largely" on plaintiff's subjective complaints.

The Commissioner argues since plaintiff was able to return to work a month after Dr. Washburn completed his evaluation, it was proper for the ALJ to reject the doctor's opinions because plaintiff's "condition was not as severe as he was reporting." Tr. 15. Plaintiff testified he began work sometime in mid to late October 2008 but it is unclear whether plaintiff worked in a sustained fashion, whether the work was full or part-time work or whether plaintiff was working in spite of limiting symptoms or because the symptoms were not so severe. Tr. 28. Without more, the Court cannot conclude plaintiff's "return" to work is a legitimate reason to reject Dr. Washburn's opinions. After all, unsuccessful attempts to work or attempts to work inspite of limiting symptoms may weigh in favor, not against, a finding of disability. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).

**4. Plaintiff's credibility**

Plaintiff contends the "ALJ erred in failing to provide a reason to reject plaintiff's testimony." Dkt. 11 at 11. Whether a claimant's subjective symptom testimony should be accepted

involves a two step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

The ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id.* at 1284.

Here, there are no allegations that plaintiff was malingering, so the ALJ was required to provide clear and convincing reasons for rejecting her testimony. The ALJ failed to meet this burden.

The ALJ posed multiple reasons for rejecting plaintiff's testimony. The ALJ first rejected plaintiff's testimony on the grounds that plaintiff's "wide range of activities is not consistent with his alleged limitations." Tr. 14. Specifically, the ALJ found plaintiff watches his children twice a week, prepares meals and does laundry, shops, drives, engages in social activities, and gave a detailed description of his history and limitations. *Id.* But this finding was based on statements

plaintiff made in a function report. An examination of the report reveals plaintiff's activities are consistent with his limitations. As plaintiff stated in the report:

> I struggle each morning trying to. Just get out of bed, I sometimes Just give up and stay in bed because I have little energy to do anything. Most of the time. I have nightmare and night sweats which cause me to be anxious, most of the time I stay by myself Just have enough energy to warm up froze dinner get rest most of the time any memories of Iraq and the lost of 13 members of my family during the chemical complain in Halebja town and the death of my girlfreind [sic] is all I can think if I am preoccupied with the news from Iraq then when I am not with my kids I just go to bed and have trouble falling asleep.

Tr. 92.

Plaintiff also stated that he tried his best to take of his children two days a week and that "a freind [sic] helps my kid's during visitation;" (Tr. 93) that he "mostly staying by myself and pick up my kids twice a week or do my shopping once a week plus going out DSHS, SSI and doctor appointment;" (Tr. 95) that he goes shopping for "quick and microwave food" once a week for 30-45 minutes to "avoid crowd;" *Id.* and that for his social life, he rides a motorcycle once a week for 20-30 minutes and calls his mother. Tr. 96. He further indicated he had problems getting along with friends, families and neighbors and liked "to be alone most of the times." Tr. 97.

The ALJ also rejected plaintiff's testimony on the grounds "the objective medical evidence does not support the severity of his alleged conditions." Tr. 14. The ALJ arrived at this conclusion on the grounds that "Dr. Hargrove noted in her December 6, 2006, evaluation that the claimant was pleasant, calm, and cooperative (9F-2). He was also goal directed, logical and appeared to have average intellect." *Id.* However, the ALJ provides no explanation why being pleasant and cooperative, goal directed, or logical undermines plaintiff's credibility. Dr. Hargrove never opined that being pleasant, goal directed, or logical were inconsistent with plaintiff's diagnosis of PTSD and depression, or that these factors proved plaintiff was not limited by these conditions. In fact,

she diagnosed plaintiff with PTSD and depression and opined he needed continued medical treatment. Tr. 207-208. Moreover, her mental status exam indicates plaintiff was far from normal. She stated plaintiff's "affect is constricted. Mood is described as irritable, overwhelmed and fearful." Tr. 207.

Next, the ALJ rejected plaintiff's testimony on the grounds that because plaintiff missed mental health appointments at Valley Cities Counseling in 2008, Valley Cities closed plaintiff's file. Tr. 14. "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, "disability benefits may not be denied because of the claimant's failure to obtain treatment [he or she] cannot obtain for lack of funds." *Id*. at 638 (*quoting Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)); *Regennitter v. Comm'r of the Soc. Sec. Admin*., 166 F.3d 1294, 1297 (9th Cir. 1999). Here, the Valley Cities Counseling records states "Call from clt. Said he got msg. Won't be coming back as he has no insurance." Tr. 275. Accordingly, the Court finds the ALJ erred in relying on this ground to reject plaintiff's testimony.

The ALJ also rejected plaintiff's testimony because plaintiff told Dr. Fleming in December 2007, he had just gotten married and was happy, and because it is unclear whether plaintiff restarted his medications. Tr. 14-15. While Dr. Fleming noted plaintiff "is happy because he met and married a new wife," she did not opine that plaintiff's mental disorders had resolved. Tr. 245. Rather she continued to diagnose plaintiff as suffering from PTSD and depression. She stated that he still had nightmares and "overall is depressed." *Id.* After her examination she ordered plaintiff take the antidepressant Fluxotine, daily. Tr. 246. On April 16, 2008, when Dr. Fleming saw plaintiff again, she noted plaintiff was taking Fluxotine. Tr. 243. After her examination she

ordered a refill of this medication. Tr. 244. Accordingly, the Court finds the ALJ erred in relying on this ground to reject plaintiff's testimony.

And finally the ALJ rejected plaintiff's testimony on the grounds that plaintiff, in October 2008, started working at a meat shop. Tr. 14-15. There are two reasons why this is not a clear and convincing reason to reject plaintiff's testimony. First, the ability to perform sustained work from October 2008 onward only proves plaintiff could work from that point onward. It does not, however, prove whether plaintiff could work before then. And second, as discussed above, it is unclear whether plaintiff's return to work was sustained, whether the work was full or part-time work or whether plaintiff was working inspite of limiting symptoms or because the symptoms were not so severe. Tr. 28. Accordingly, the Court concludes plaintiff's "return to work" is not a clear and convincing reason to reject plaintiff's testimony.

### 5. The case should be remanded for further proceedings

Plaintiff argues the case should be reversed and remanded for payment of benefits. The Court disagrees and concludes the case should be remanded for further administrative proceedings because there are still outstanding issues to resolve. For instance, Dr. Kenderline opined that plaintiff is "likely to be unable to meet the requirements of full time employment," not that plaintiff is "unable to meet the requirements of full time employment." Tr. 175. Dr. Fleming opined plaintiff's capacity to work was severely limited but did not opine he was unable to work. Tr. 240. Dr. Washburn opined plaintiff "does not have the emotional stability and cognitive functioning needed to meet the requirements of employment at this time." Tr. 237. Perhaps Dr. Washburn is correct but that is an outstanding issue for the ALJ, not the Court to resolve in view of all of the evidence.

ORDER REVERSING AND REMANDING CASE FOR
FURTHER ADMINISTRATIVE PROCEEDINGS – 14

## V. CONCLUSION

For the foregoing reasons, the final order of the Commissioner is **REVERSED** and the case is **REMANDED** for further administrative proceedings. The Court finds the ALJ erred, at step-two, in failing to find sleep apnea a severe impairment, and erred in evaluating the medical evidence and plaintiff's credibility. The Court directs the ALJ to reevaluate all the medical evidence and plaintiff's credibility. The ALJ should (1) reevaluate and further develop the medical evidence in the record; (2) reevaluate Dr. Clerc's, Dr. Fleming's, Dr. Kenderline's and Dr. Washburn's opinions; (3) reevaluate steps two and three of the sequential evaluation process and include sleep apnea as a serious impairment; (4) reevaluate plaintiff's credibility; (5) reevaluate plaintiff's RFC; and (6) reevaluate steps four and five of the sequential evaluation process with the assistance of a vocational expert if deemed appropriate.

DATED this 8th day March, 2010.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge